IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                                          CASE NO. 1:94-cr-01009-MP-AK

ALBERT THOMAS MADRID,

   Defendant.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Doc. 972, motion to vacate, and Doc. 1029, motion to amend, filed by Albert Thomas Madrid.  He has also filed a notice of joinder in grounds raised by the co-defendant Knock.  Doc. 992.  He is represented by counsel.  The Government has filed its responses to the motions, Docs.1003 and 1033, and a notice of supplemental authority, Doc. 1020, and Madrid has filed a reply to the Government's § 2255 response and to the its response to the motion to amend.  Docs. 1015 & 1038.  This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## **BACKGROUND**

On March 10, 1994, John Richard Knock, Claude Louis Duboc,[1] and Roger Darmon[2] were indicted for drug and money laundering offenses. Doc. 2. In Count I, the Government charged that "from a date unknown but at least by January 1, 1982, and continuing up to and including the date of this indictment, in the Northern District of Florida and elsewhere," the defendants conspired to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846. In Count II, the Government charged that during this same time period and in the same locale, the defendants conspired to import marijuana into the United States "from a place outside thereof" in violation of 21 U.S.C. §§ 952, 960, and 963. *Id*. In Count III, the Government reiterated the time period and location, charging the defendants with conspiracy to "transport funds from a place in the United States to a place outside the United States, which activity was to be conducted with the intent to promote carrying on of a specified unlawful activity," in violation of 18 U.S.C. § 1956. *Id*. Count IV sought the criminal forfeiture of illegally derived property. *Id*.

Knock was arrested by French officials in Paris, France, on April 17, 1996. Presentence Report for John Richard Knock at ¶ 35. After a lengthy extradition process, he was returned to the United States in January, 1999. *Id*. On February 17, 1999, a Superseding Indictment was filed. Doc. 414. The Superseding Indictment added the instant defendant, Albert Thomas

---

[1] Duboc pled guilty in 1994, and was sentenced to life imprisonment. Doc. 387.

[2] Darmon, a French citizen, was never apprehended and died in Corsica in 2001. Doc. 1022, Ex. The charges against him were dismissed on April 27, 2006. Doc. 1023

Madrid,[3] clarified the dates of the charges to "from a date unknown but at least by January 1, 1982, and continuing up to and including April 17, 1996," and specified the overt acts in the money laundering count, Count III. *Id*. Knock was represented by Michael Kennedy; Madrid, by Randolph Daar.

In August, 1999, the Government moved to disqualify Mr. Kennedy from further representation of Mr. Knock. Doc. 510. After hearing, the Court denied the motion to disqualify, and at a subsequent *Garcia* hearing, Knock waived any conflicts. Docs. 529 & 550.

Trial finally commenced on May 2, 2000, against Knock and Madrid.

On the fifth day of trial, the day opened with a discussion regarding a plea agreement between the co-defendant Madrid and Canadian authorities. Madrid's attorney objected to its introduction because it contained "a prejudicial statement of facts that the government prepared and attached as an addendum to the plea agreement." Doc. 878 at 6. Kennedy objected on Knock's behalf on hearsay grounds and also argued that introduction of the agreement deprived him of "any right of confrontation even if they attribute those statements to Mr. Madrid." *Id*. He also pointed out that the statements were "made post-conspiracy by Mr. Duboc and by other people who have already been arrested and therefore cannot be in furtherance of the conspiracy." *Id*. In response, the Government argued that as to Madrid, the plea agreement qualified as a statement of a party opponent, admissible as an exception to the hearsay rules. *Id*. at 7-8; *see* Fed. R. Evid. 801(d)(2) (statements which are not hearsay include admission by party-opponent).

---

[3]Madrid was arrested on May 10, 1996 in Mexico on Canadian warrants. Knock PSR at ¶ 36. He was extradited to Canada, where he pled guilty to possession with intent to distribute hashish and was sentenced to six years imprisonment. *Id*. After serving four years, Canadian authorities turned him over to the United States. *Id*.

The Government also cited Fed. R. Evid. 410 for the proposition that statements made during plea negotiations which actually result in a guilty plea are admissible at trial. *Id*. at 7.  As to Knock, the Government agreed that redaction would be necessary to cure any possible *Bruton* problems.  *Id*. at 8.  Mr. Kennedy then requested additional time so that he and Mr. Daar could "do a little research" but agreed that "in terms of the *Bruton* problems, [the Government] is absolutely right."  *Id*. at 8.

Daar pointed out that Madrid did not sign Appendix A, and while he agreed that "the government can introduce the fact that my client pled guilty and was sentenced [in Canada]," he argued that it could not "introduce through my client the statement against interest which is made by the government and submitted as an appendix to the plea agreement."  *Id*. at 10.  In response, the Government argued that Madrid "clearly adopted Appendix A by signing the plea agreement."  *Id*. at 11.  Daar disputed this contention.  *Id*.  In light of questions from the Court, Daar continued:

> I'm not certain...from this document whether or not [Madrid's Canadian] attorney did agree to what is in Appendix A.
>
> Secondly, I do not believe that the attorney can bind Mr. Madrid into a statement by this first paragraph.
>
> Thirdly, I think it would be an incident of double hearsay at this point.

*Id*. at 12.

The following day, the arguments continued after the Government proffered the agreement outside the presence of the jury.  At that time, Daar focused on the language of the documents to conclude that it could not be presumed that Madrid had signed Appendix A through his attorney and that Appendix A was not a statement made by Madrid but was a

statement created by the prosecution "full of information that Mr. Madrid could not have given them and could not have known whether it's true or not, information about what the government did, what other people did and so forth." *Id*. at 59-62.  He also argued that the statement should not be admitted because of collusion between Canadian and United States prosecutors. *Id*. at 63. He then points out that although the Government knew ahead of trial that the plea agreement would be an issue, it did not tell him about its intentions until the "last minute" when it showed him "20 boxes in a room and said anything in that room can be introduced...." *Id*. at 64-65.  Mr. Daar then asked for a hearing "to talk to the government lawyers, to law enforcement and find out if [there] was any coercion" because he only "found out about it yesterday" and because there was "pressure on us to finish...." *Id*. at 65.  He pointed out that this was a Canadian plea, and he needed time to investigate and research the issues:

> Was a statement made voluntarily?  What are the laws in Canada?  What did Mr. Madrid's counsel advise him?
>
> \* \* \*
>
> I think I would be entitled to a hearing with Mr. Givens who was the attorney in Canada to find out actually what Mr. Madrid was told with respect to this statement, whether he adopted it or not.

*Id*.  Daar then turned his argument to whether the probative value of the plea agreement document itself, particularly Appendix A, outweighed the danger of unfair prejudice. *Id*.; *see also* Fed. R. Evid. 403.  More particularly, he stated:

> [I]f this document gets in and the government succeeds in drawing the inference that they want, which is that: Gee, all of this is true, because Madrid signed it, it puts me in a terrible position.
>
> I think it's a very prejudicial document.  It contains so many things outside of my personal knowledge, including things that the government did.  The government

> has ample proof of everything that is in here.
>
> We've heard ad nauseam proof about Vancouver. They get the plea in, what is the...probative value of the appendix?

*Id*. at 66.

In response, the Government explained that it had told counsel in August, 1999, that it would be offering the Canadian agreement into evidence. *Id*. at 67. It then argued that Daar's arguments "go to the weight of the evidence, not its admissibility." *Id*.

Kennedy also continued to press his arguments against admissibility of the plea agreement, pointing out as well that the factual statement was not a statement by Madrid but instead "a conglomeration and synthesis of a tremendous amount of very prejudicial information." Doc. 879 at 72. He also argued that the statement of facts was "not made in furtherance of the conspiracy" but was a "narrative discussion of past events made by people who have already made deals." *Id*. He also argued that the probative value of the plea agreement was limited "because there is very little...in here that hasn't already been attested to by other Mounties or by other witnesses here. Whereas the prejudicial value is extremely great." *Id*.

Later, Mr. Daar proffered the following:

> [I]f Mr. Madrid's [Canadian] lawyer, David [Givens][4] was subpoenaed to this court, that he'd testify that he told Mr. Madrid that the Appendix statement A could not and would not be attributed to him in any proceeding based on his understanding of the law at the time that this agreement was signed.

*Id*. at 80. In response, the Court told Daar to "[h]ave him here Tuesday morning or put your

---

[4] There are numerous spellings of counsel's name throughout the record, and therefore, for consistency, the Court has chosen the spelling which appears most frequently, "Givens."

client on the stand." *Id*. Mr. Daar advised the Court that he would try to obtain counsel's appearance to "provide the Court with...credible authority...that it was not an adoption...." *Id*. at 81.

On the tenth day of trial, the Government offered the plea agreement with appendices into evidence as GX-135. Doc. 883 at 8. It had been "redacted to remove reference to Mr. Knock." *Id*. While Kennedy agreed that with the redaction, there were no further *Bruton* problems with the agreement, he did not "waive [the] fundamental objection to its admissibility." *Id*. Mr. Daar advised the Court that he could not secure Canadian counsel's presence "absent some need for the Court to have him here." *Id*. at 9. He then addressed contentions made by a Government declarant regarding Appendix A:

> [T]he one thing unaddressed by the Government's declaration, which I know is important in the Court's reasoning, is the agency principle by which Mr. Madrid's attorney signed the agreement. The Court brought that up at the first hearing on this. And in the declaration of Mr. Givens, I believe that he clearly states that he had, in essence, a conditional agency from Mr. Madrid.
>
> And that it was...Mr. Madrid's understanding that his signature would not bind Mr. Madrid to the agreement as to the government's statement of facts, which I think removes any admission based on the agency, since the agency was limited and conditional.
>
> \* \* \*
>
> Lastly, I would offer to the Court that the government attorney says that it was her understanding that Givens and Madrid agreed to these submitted facts. There is no affirmative statement in that that she discussed specifically this issue with Mr. Givens, or that Mr. Givens said to her: I have authority to sign this. I have authority to accept this statement of facts.
>
> If Mr. Givens had said such a thing to her, she would have said, rather than–it's my understanding she would say: I recall that Mr. Givens represented to me that he had authority to accept these facts on behalf of Mr. Madrid.

*Id*. at 9-10. He continued:

> [Mr. Givens] says: I assured Mr. Madrid, prior to receiving authority to sign the agreement, that my signature would not constitute an admission. That would be an affirmative statement rather than just it was assumed between Mr. Madrid and I.
>
> So I think there is an uncontradicted affirmative statement before this Court as to the limitations on the agency and as to both Mr. Givens's and Mr. Madrid's understanding that the signature would not bind Mr. Madrid to that statement of facts.
>
> Lastly....I don't believe [Appendix A] adds anything of significant evidentiary value.
>
> \* \* \*
>
> [T]here really isn't significant new evidence that this jury hasn't heard in one form or another from a hundred or so witnesses and 260 exhibits. It tends to be cumulative, repetitive and a summary almost.
>
> And, hence its evidentiary value is very limited. Unfortunately, it contains numerous statements about facts which Mr. Madrid could not possibly have knowledge about. And I think it's highly prejudicial for this jury to...believe that Mr. Madrid adopted those statements which he had no information about while he was in Mexico through his attorney in a limited agency situation.
>
> I think it's very, very prejudicial. And I would urge the Court to reconsider its initial feelings on the matter.

*Id*. at 10-11.

The Court then admitted the plea agreement, finding that the "redacted version cures *Bruton*." *Id*. at 16.

While drafting jury instructions, the Court became concerned about "the legal soundness" of Knock's defense offered in opening statements. Doc. 609. In particular, the Court was concerned about Count I, because neither § 841 nor § 846 specified a "*locus delicti*," and it was considering giving an instruction to the effect "that, if the evidence shows beyond a reasonable

doubt that Defendants conspired to possess marijuana with the intent to distribute, then the jury may find Defendants guilty–regardless of the location of the conspiracy." *Id*. The Court therefore sought the parties' input on this issue, as well as on the questions of venue and improper amendment of the Superseding Indictment. *Id*.

Over Defendants' objections, the jury was charged in part that "venue may exist in the district where any co-conspirator is arrested or first brought," if it found that the charged conspiracy and the overt acts of that conspiracy "occurred entirely or almost entirely outside of territory of the United States...." Doc. 642. The Court later memorialized its reasoning with respect to the giving of this instruction. Doc. 667. The Court also instructed the jury that the defendants had raised a statute of limitations defense, and it instructed the jury that thecontrolling statute of limitations was five years. Doc. 642. It then calculated the limitations period as to Knock from the date of the initial Indictment, March 10, 1994, extending back to March 19, 1989. *Id*.

On May 30, 2000, the jury, after specifically finding venue properly lay in this District on all counts as to both Defendants, convicted Knock on Counts I, II, and III and Madrid only on Count I. Docs. 644 & 646. On the following day, the jury found that Knock had obtained $438 million and Madrid had obtained $8.8 million "from [their] illegal drug activity during and in furtherance of the conspiracy." Doc. 655.

Before sentencing, Madrid submitted a sentencing memorandum challenging the probation officer's recommendation of a 324-405 month sentence and an upward departure because the "drug quantity is at least ten times the minimum quantity required for Level 38," arguing that because the Superseding Indictment did not contain a drug quantity, under

*Apprendi*, which had been decided less than a month after the jury's verdict, he could not be sentenced based on drug quantities that were not proven and found by the jury beyond a reasonable doubt. Doc. 674. He argued, instead, that he should be sentenced under 21 U.S.C. § 841(b)(1)(D), with a maximum sentence of five years, and that no upward departure was warranted. *Id*. Alternatively, he requested that the Court sentence him to a term of 235 months. *Id*.

In response, the Government pointed out that Madrid "did not object to the court's jury instruction regarding the elements of the offense...or to the court's verdict form," and thus, he could not now raise the issue unless he made a showing of plain error. Doc. 676. The Government argued that the evidence "was overwhelming that the defendants were responsible for over 1,000 kilograms of marijuana," and thus, Madrid could not show plain error. *Id*.

Subsequently, the Court issued an Order directing the parties to answer a series of questions related to *Apprendi*, including, *inter alia*: (1) whether the Superseding Indictment was defective and if so whether the defect was jurisdictional, (2) whether the Court had the discretion to empanel a second jury solely to determine drug quantity, (3) whether the harmless error standard applied, and (4) whether the defendants waived any objections to the allegedly defective indictment. Doc. 682.

Following briefing, the Court, relying on *United States v. Nealy*, 232 F.3d 825 (11th Cir. 2000), found no *Apprendi* error with regard to Count III and though there was error regarding the Court's failure to instruct the jury regarding drug quantities with regard to Counts I and II, the error was harmless since, based on the overwhelming evidence presented, "no reasonable jury could have rationally concluded that Defendants were guilty of the substantive

offenses–conspiracy to possess with intent to distribute marijuana or conspiracy to import marijuana–without also concluding that the amount of marijuana possessed was more than 1000 kilograms." Doc. 702.

Madrid was subsequently sentenced to life imprisonment on Count I, the only count for which he was convicted. Docs. 718 & 728. Madrid appealed, and Daar continued to represent him. *See* Doc. 724.

On appeal, Madrid raised several errors. He first complained that the Court constructively amended the Superseding Indictment or, alternatively, that there was insufficient evidence to support the jury's verdict "that there was an overt act in furtherance of the conspiracy in the Northern District of Florida." Doc. 935. The court found that the allegation that the conspiracy occurred in this District "and elsewhere" was sufficient, but it also concluded that the evidence supported a finding that an overt act occurred in this District, pointing to testimony that Nicholas Grenhagen, "an individual who worked for the charged drug organization" met with the DEA agent in Gainesville, Florida, and that several unindicted co-conspirators made phone calls to the agent in Gainesville as well. *Id.* Thus, there was no error. *Id. See also United States v. Grenhagen*, GCR 93-1043-MMP (N.D. Fla.); *United States v. Duboc*, 1:94cr1009-MMP (N.D. Fla.) at Doc. 349 (rejecting challenge to venue in original Indictment in this case, finding it to be triable issue of fact, and citing testimony from *Grenhagen* trial regarding series of meetings and correspondence between various members of conspiracy during which they discussed plans to off-load, into United States, large quantity of marijuana with at least one of these meetings taking place in Northern District of Florida).

Second, Madrid contested the introduction of his Canadian plea agreement, arguing that

"his Canadian attorney did not have authority to sign the plea agreement if the facts alleged in Appendix A were intended to have been deemed admitted." *Id*. "The facts stated in Appendix A summarized the plea to the Canadian drug conspiracy and was prepared by Canadian prosecutors relying upon reports gathered by Royal Canadian Mounted Police Officers." *Id*. Furthermore, Madrid contended that the fact that Appendix A was the only appendix he himself did not sign showed that it was not intended to be a part of the plea agreement. *Id*. The Eleventh Circuit found that the Court did not abuse its discretion in admitting the plea agreement. *Id*. It found that the evidence supported a finding that Appendix A was an essential part of the plea agreement, including testimony from twenty-two Canadian officers regarding the facts in Appendix A. *Id*. The court also found that if there was error in admitting the agreement, it was harmless given the "overwhelming evidence presented in the lengthy criminal trial against Madrid...." *Id*.

Madrid also challenged the Court's exclusion of testimony during trial from Madrid's mother. *Id*. The Court rejected this argument. *Id*. Finally, Madrid challenged his sentence on *Apprendi* grounds, which the court of appeals rejected, holding:

> In view of the overwhelming record evidence of the massive drug conspiracy alleged in this case, no reasonable juror could have found the defendants guilty of conspiracy to possess with the intent to distribute marijuana from 1982 and 1996 without finding the minimum 1,000 kilograms threshold to impose a life sentnece under 21 U.S.C. §§ 841(b)(1)(A)(vii), 846.

*Id*.

The instant motion to vacate followed. On this occasion, Madrid presents claims related to (1) *Booker/Blakely/Apprendi* and (2) the introduction of Madrid's plea agreement. Doc. 972. He also joins Knock's arguments regarding counsel's failure to object to or request a limiting

instruction regarding evidence of foreign drug imports and *Booker*. Doc. 992. Over 14 months after the Government filed its response to the motion to vacate, Madrid sought leave to amend after he secured new counsel. Doc. 1029. In the proposed amended motion, he adds three claims: (1) that Mr. Daar had a conflict of interest in representing Madrid because he could have testified as a witness regarding Madrid's "withdrawal from marijuana related activities in 1993," (2) that Daar had a conflict of interest in representing Madrid because he could have testified as a witness regarding his own advice to Madrid "regarding the consequences of the [Canadian] plea...and that the plea will not constitute an admission, adoptive or otherwise, to the Canadian prosecutor's factual summary identified as Appendix A," and (3) that the Court erroneously instructed the jury regarding withdrawal from a conspiracy and counsel was ineffective in failing to object to the instruction and to raise the issue on appeal. Doc. 1031.

## **DISCUSSION**

The Court begins with the question of the proposed amendment. It obviously has been filed after the expiration of the usual one-year statute of limitations for seeking § 2255 relief, *see* 28 U.S.C. § 2255(1) (one-year limitations period for seeking § 2255 relief runs from the date on which judgment of conviction becomes final), and Defendant does not argue that the claims are timely under any other subsection of the statute. Thus, because the proposed claims are facially untimely, they are barred unless they "relate back" to the original filing pursuant to Fed. R. Civ. P. 15(c). *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). The new claims "will relate back and be considered timely if they 'arose out of the conduct, transaction, or occurrence' set forth in his original § 2255 motion." *Davenport*, 217 F.3d at 1344. For relation back to apply, the untimely claim must "have more in common with the timely filed claim than

the mere fact that they arose out of the same trial and sentencing proceeding." *Id*. Rather, the untimely claim "must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" *Id*. Rule 15(c) is not "so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." *Pruitt v. United States*, 274 F.3d 1315, 1318 (11th Cir. 2001). Thus, while the rule "contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by amendment." *Pruitt*, 274 F.3d at 1318.

Indisputably, any claim that the Court erred in its instructions to the jury is a substantive claim which is time-barred. It is a totally new claim unrelated to any others pled in the original § 2255 motion, and thus, it does not relate back to the original pleading. As to the related claim that counsel was ineffective for failing to object to the allegedly erroneous instruction, it too is a totally new claim. Though Madrid has joined Knock's claim that counsel ineffectively failed to object to the admission of evidence of foreign importations or to request a limiting instruction in that regard, this limited reference to the Court's instructions to the jury is insufficient, in this Court's view, to show that it arose from the same set of facts so that it should relate back to any timely pled claim.

Regarding the other two ineffective assistance claims, both of which deal with whether Mr. Daar represented Defendant while he labored under a conflict of interest, they too are time-barred and do not relate back to any of the previously filed claims. While Madrid has raised the issue of counsel's effectiveness with regard to his handling of Appendix A, these proposed conflict of interest claims are totally new claims of ineffectiveness and have nothing in common

with the timely filed claim except that they involve Mr. Daar and his representation during the trial of this case. In short, they involve matters which represent separate conduct both in time and type, and thus, they do not relate back.

The motion to amend should therefore be denied, and the Court turns to the issues raised in the motion to vacate.

    1.    *Booker/Blakely/Apprendi.*

Defendant claims that he is entitled to be resentenced pursuant to *Booker*, *Blakely*, and *Apprendi*. Defendant presented an *Apprendi* argument on appeal, which the Eleventh Circuit rejected. It will not be reconsidered here. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000), *cert. denied*, 531 U.S. 1131 (2001). Furthermore, the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 244 (2005), is not retroactively applicable to cases on collateral review, as "*Booker*'s constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review." *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005).

      2.      Canadian plea agreement.

In this claim, Madrid charges that Mr. Daar rendered ineffective assistance by failing at trial and on appeal "to investigate, research, and present factual information and controlling legal authority which would have excluded Appendix A of the Canadian agreement from evidence, and the admission of Appendix A into evidence prejudiced [him]." In support of this claim, he submits the declaration of Ian Donaldson, Queen's Counsel, who practices criminal law in British Columbia. According to Donaldson, the declaration from Defendant's Canadian attorney submitted by Mr. Daar to the Court during trial was a correct interpretation of the effect of Appendix A: "[A]s a matter of Canadian law, under the Plea Agreement...Mr. Madrid agreed to the terms of the agreement itself through his counsel, but neither Mr. Madrid nor his counsel agreed to nor adopted the 'statement of facts' attached to the agreement as 'Appendix A.'" Doc. 972, Attach. 2. In his opinion, the declaration from the Government's declarant was "wrong" and "inaccurate" and "grossly overstate[d] the law in Canada." *Id*.

In this Court's view, Donaldson's affidavit, rather than supporting a claim of ineffectiveness, actually shows that Mr. Daar acted effectively in his attack on Appendix A. At most, he has shown that neither this Court nor the Eleventh Circuit should have given any credit to the Government's witness. This, however, is a far cry from showing that Mr. Daar acted ineffectively. Assuming Mr. Donaldson is correct, the Court erred, not Mr. Daar, and counsel cannot be found ineffective merely because the Court rejects his arguments and rules against him.

Furthermore, as the Eleventh Circuit found, even if the Court erred in admitting the document, and even if the undersigned assumes that counsel acted deficiently in his attack on

Appendix A, Defendant was not prejudiced thereby because, in the words of the court of appeals, there was "overwhelming evidence presented in the lengthy criminal trial against Madrid...."

    3.    Failure of counsel to object to admission of evidence of foreign importations or to request limiting instruction.

During trial, the Government presented evidence not only of drug importations into the United but also of importations into Australia, Canada, and Holland. According to Defendant, as more fully set forth in Knock's motion to vacate, counsel should have objected to this evidence or, at the very least, have requested a limiting instruction. This claim is without merit, as the evidence of the foreign importations was useful to the defense that there were multiple drug conspiracies involving various players and different locales and time periods and that Defendant had withdrawn from any conspiracy to import drugs into the United States. If counsel had objected to the evidence, he would have been cutting off that line of defense completely, and in light of the overwhelming evidence of Defendant's guilt, no reasonable attorney would have wanted to cut off any conceivable manner of securing acquittal for his client. Even so, the evidence was admissible, at the very least, to "complete the story of the crime," *United States v. Ramsdale*, 61 F.3d 825, 829 (11th Cir. 1995), and counsel's objection to it would have been overruled.

    4.    *Booker*.

Madrid adopted only the second part of Defendant's *Booker* claim, but as set forth previously, the claim is not well taken. *Apprendi* arguments were made and rejected on appeal, and *Booker* is not retroactively applicable to cases on collateral review.

## **CONCLUSION**

As none of Defendant's claims have merit, the Court respectfully **RECOMMENDS**:

That the motion to amend, Doc. 1029, be **DENIED**;

That the motion to vacate, Doc. 972, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this ___**22**$^{nd}$___ day of February, 2008.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### **NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**